**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE *EX PARTE* APPLICATION OF<br>Associação Nóbrega De Educação E Assistência Social –<br>ANEAS<br><br>*Petitioner,*<br><br>For an Order Pursuant to 28 U.S.C. § 1782 to Take<br>Discovery for use in Foreign Proceeding in the Federal<br>Republic of Brazil. | Case No. 23-MC _____ |

## DECLARATION OF JOSÉ LUIZ BAYEUX NETO

I, José Luiz Bayeux Neto, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States, as follows:

1.      I submit this declaration in support of Associação Nóbrega de Educação e Assistência Social ("ANEAS" or "Petitioner")'s *Ex Parte* Application and Petition For An Order To Conduct Discovery From Tishman Speyer Properties, L.P. ("Tishman Speyer" or "Respondent") For Use In A Foreign Proceeding Pursuant To 28 U.S.C. § 1782 ("1782 Application"). Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the 1782 Application and accompanying Memorandum of Law.

2.      Unless otherwise indicated, all facts set forth in this declaration are based upon: (a) my personal knowledge; (b) my review of relevant documents, including the proposed subpoenas; and (c) information supplied to me by the Petitioner or professionals retained by them.

3.      All exhibits attached hereto are true and accurate copies, or true and accurate excerpts of those copies. Where an exhibit is in a foreign language a certified translation is

1

provided and when not provided, Petitioner can always comply with a Court request to provide such translation.

## I.      BACKGROUND AND QUALIFICATIONS

4.      I am a Brazilian citizen and over the age of 21. I am a Brazilian lawyer, having been admitted to practice in Brazil since 2009. I studied law at the São Paulo State University, or Universidade de São Paulo – USP, where I also pursued my academic master's degree in corporate and civil law.

5.      Since 2012, I have been a partner with Warde Advogados, a leading Brazilian law firm. The firm specializes in complex disputes involving litigation and arbitration. My professional experience focuses on corporate litigation, specifically disputes between minority and controlling shareholders and or between minority shareholders and directors and/or management of companies.

6.      A copy of my resume is attached hereto as **Exhibit 1**.

## II.     FACTUAL BACKGROUND

7.      My firm was contacted by ANEAS in September 2022 to represent the association in civil and criminal judicial proceedings.  My firm also represents ANEAS in an arbitration proceeding in Brazil involving its business relationship with Tishman Speyer Brazil[1] but the arbitration proceeding is separate from the criminal proceeding at issue in this 1782 Application.  ANEAS is not seeking evidence in this District for the arbitration proceeding.

8.      My firm currently represents ANEAS in (i) civil proceedings pending before the São Paulo State Court related to a complex commercial agreement entered into between ANEAS and Tishman Speyer Brazil; (ii) a criminal investigation against Tishman Speyer

---

[1] For this 1782 Application and my declaration in support thereof, Tishman Speyer Brazil refers to TS-26 Participações Ltda., TSM Desenvolvimento Imobiliário Ltda., and TS Gestão e Consultoria Imobiliária Ltda., either together or individually.  In any regard, the three companies are limited liability companies incorporated under the laws of Brazil and wholly owned subsidiaries of Tishman Speyer Properties L.P.

Brazil and its former CEO Daniel Sherman for embezzlement; and (iii) an arbitration proceeding pending before the ICC in São Paulo, Brazil.

9.      As explained throughout this declaration, the purpose of this 1782 Application is to gather evidence in the United States for use in a criminal proceeding initiated with the Third Police Department for Financial and Economic Fraud Investigation for the São Paulo State Criminal Investigation Department or *3ª Delegacia de Polícia de Investigações sobre Fraudes Financeiras e Econômicas do Departamento Estadual de Investigações Criminais –* DEIC, (the "Brazilian Criminal Authority"). The evidence to be gathered in this District will support ANEAS' allegations that both Tishman Speyer Brazil and its former CEO, Daniel Cherman, acted with intent to embezzle millions of dollars from ANEAS though a side agreement with a third party hired by Tishman Speyer Brazil.

A.      **ANEAS and the São Luís Real Estate Complex**

10.      ANEAS is a Jesuit association incorporated in Brazil in 1900 and the main Brazilian subsidiary of Vatican's Jesus Society, or *Compagnia di Gesù*.

11.      Since the beginning of the nineteenth century, ANEAS has been the owner of a real estate development located at one of São Paulo's most famous and expensive locations; an entire block located at the Paulista Avenue ("*Avenida Paulista*"). The real estate complex is located at Paulista Avenue between Haddock Lobo and Bela Cintra Street and comprises five buildings and one church (together the "São Luís Real Estate Complex"). The São Luís Real Estate Complex comprises an area of approximately 81.893 square meters, or 881.488,91 square feet, with an estimate market value of R$ 1,230 billion Brazilian reais.

12.      One of the buildings was the headquarters of São Luís School ("*Colégio São Luís*"), a traditional catholic school founded by the Jesuit Association in 1867 and, to this date, in business enrolling over 2,500 students. The São Luís School operated from 1917 until December 2019 at São Luís Real Estate Complex, when it moved to another location.

13.     As real estate kept increasing in value in São Paulo, especially in such a noble area of the city, ANEAS hired a specialized consultancy firm to advise ANEAS with potential ideas and partners that would be interested in exploring the area as an integrated commercial complex, except for the church.  In December 2019, ANEAS transferred the São Luís School to another location.  Since then, ANEAS began to search for partners to invest in the São Luís Real Estate Complex.

14.     ANEAS's goal was never to sell the São Luís Real Estate Complex.  On the contrary, ANEAS's purpose was to find a partner with true real estate development and management experience to invest in a major renovation project that would result in a new commercial complex to attract multiple tenants and, therefore, increase the value of the real estate land by turning the block into a unified commercial complex with market value commercial rent prices.

15.     Because ANEAS was looking for a partner to renovate and manage an equivalent to billion dollars in future commercial rent income (a complex commercial relationship), ANEAS specifically searched for a liquid partner with its own resources to invest in a project the size of the São Luís Real Estate Complex.  ANEAS envisioned a long-term relationship with the prospect partners, which would last at least five decades.  ANEAS did not find as many suitable partners given such limitations.

**B.      ANEAS and its Business Relationship with Tishman Speyer Brazil**

16.     In the middle of 2019, ANEAS was introduced to the Tishman Speyer group. At that time, the company gave a presentation on the Tishman Speyer group and focused on the ability of the company to support ANEAS on its endeavors, mainly due to Tishman Speyer's liquidity and own cash to invest, without relying on third parties for financing.   TS-26 Participações Ltda., TSM Desenvolvimento Imobiliário Ltda., and TS Gestão e Consultoria Imobiliária Ltda. are Respondents' subsidiaries in Brazil.

17.     After a round of meetings with different candidates, ANEAS decided to engage in further conversation and negotiations with Tishman Speyer Brazil due to its liquidity and cash availability to invest in the São Luís Real Estate Complex, without depending on third party financing.

18.     On April 8, 2020, ANEAS entered into a complex agreement with Tishman Speyer Brazil: "*Contrato Complexo e Atípico de Estruturação e Desenvolvimento de Empreendimento Imobiliário e Outras Avenças*," or as it translates into English: "Complex and Atypical Contract for the Structuring and Development of a Real Estate Enterprise and Other Covenants," which will be referred hereto as the "Complex Real Estate Agreement." Due to the COVID pandemic, the parties have not performed their duties under the agreement until August 2021. A copy of the Complex Real Estate Agreement is attached hereto as **Exhibit 2**.[2]

(a)     **The Complex Real Estate Agreement Signed Entered into Between ANEAS and Tishman Speyer Brazil**

19.     The Complex Real Estate Agreement is the main agreement regulating the renovation, joint management, and administration of future commercial income as a result of the renovated São Luís Real Estate Complex. Other agreements are ancillary to the Complex Real Estate Agreement. As set forth in section II of the agreement, the São Luís Real Estate Complex as a whole for the purpose of the renovation and future commercial rents and not single buildings and units, as ANEAS was focused on maximizing the value of the complex and commercial rents.

20.     The Complex Real Estate Agreement is a long-term agreement, with a term of 50 years. The goal of the agreement is to be a true partnership under Brazilian law, in which

---

[2] Due to the length of the document and main issues of the 1782 Application that arise out of the agreement but are not concerning the agreement dispute itself, ANEAS did not attach a translated version of the document but will do so if this Court demands it to.

one party offers the title and ownership of a billion-dollar real estate parcel and the other its own financing and expertise to renovate the real estate parcel and manage future rent income.

21.     ANEAS would split a significant portion of the future rent proceeds with Tishman Speyer Brazil, what could amount to almost 50% of the future rent income. As per the financial predictions negotiated by ANEAS and Tishman Speyer Brazil, the last one could receive hundreds of millions of dollars by the end of the term of the Complex Real Estate Agreement.

22.     To achieve the goals of the partnership as explained above and considering the relevant issues for the purpose of the 1782 Application in aid of the criminal proceeding against Tishman Speyer Brazil and its former CEO, three sections of the Complex Real Estate Agreement are worth highlighting: sections 4.1, 8.6, and 17.10 of the Complex Real Estate Agreement.

23.     As emphasized throughout this declaration, ANEAS was in search of a liquid partner with its own resources to invest in the São Luís Real Estate Complex. The reason behind such demand was simple: ANEAS did not want a middleman or real estate agent to intermediate its contact with a developer, builder, or a financing agent, because it wants to maximize the rent value of the commercial units. ANEAS wanted the "whole package" to be performed by one party, that is the main reason why ANEAS did only speak with a few candidates.

24.     Section 4.1 of the Complex Real Estate Agreement states that Tishman Speyer Brazil commits to invest its own proceeds in the renovation of the São Luís Real Estate Complex. "Own proceeds" is defined as proceeds from its partners subscribed in the form of

the company's capital stock.[3]  It is clear that both parties agreed that Tishman Speyer Brazil would finance the renovation with its own proceeds and not third-party proceeds.

25.      Section 8.6 of the Complex Real State Agreement provides that the investments that Tishman Speyer Brazil would dispend in the funding of the renovation of the building would vary between 290 million reais and 370 million reais.  Tishman Speyer Brazil would be entitled to receive a percentage over the total amount of the lease proceeds that would vary from 40% to 50%, depending on the amount invested in the property renovation works.

26.      Section 17.10 of the Complex Real Estate Agreement, in further confirmation to section 4.1, sets forth Tishman Speyer Brazil's obligation to disclose any third-party relationship (either in place or prospective) that could affect the Complex Real Estate Agreement, in special the rent agreement between a tenant and ANEAS.  Again, for obvious reasons, ANEAS wants to maximize the rent amount it will collect from prospective commercial tenants, which would be split with Tishman Speyer Brazil.  If Tishman Speyer maintains any close commercial relationship with prospective tenants, that could materially impact the value of a future rent.

> (b)      **The Suspicious "Grupo Cedro" Commercial Rent Proposal Presented by Tishman Speyer Brazil to ANEAS to Rent a Significant Portion of the São Luís Real Estate Complex.**

27.      As stated in paragraph 18, the Complex Real Estate Agreement was suspended during the COVID pandemic, and the parties reinitiated their activities in August 2021.  In March 30, 2022, Tishman Speyer Brazil brought to ANEAS' attention a commercial rent proposal signed by Grupo Cedro, a business group from the State of Minas Gerais (the

---

[3] 4.1 Without prejudice to the provisions of Clause XII below, TS undertakes to provide for carrying out the Improvement and Readjustment Works of the São Luís Complex **with own resources**, considered as resources contributed by its partners by way of payment of quotas representing the capital stock of TS, in compliance with the Plan (or the New Plan or the Adjusted Business Plan, as the case may be) and the Projects, as approved by the City of São Paulo. for the purposes of clarity, ANEAS will not have any patrimonial responsibility for financing or pay for the Improvement and Readjustment Works of the São Luís Complex."

"Proposal"). The tenant under the Proposal would be a subsidiary of Grupo Cedro, a limited liability company named São Paulo Medical Center Ltda. After ANEAS' due diligence, ANEAS found out that São Paulo Medical Center Ltda. was incorporated on January 21, 2022, two months before the Proposal was submitted to ANEAS.

28.     Under such commercial rent proposal, Grupo Cedro, through its subsidiary São Paulo Medical Center Ltda. extended their formal offer to rent the real estate parcel equivalent to the former São Luís catholic school building, which have been vague since December 2019. The former school building corresponds to approximately one third (376736,86 square feet or 35,000 square meters) or 27.4%, of the São Luís Real Estate Complex. Grupo Cedro offered to pay **R$128,33** (one hundred and twenty-eight reais and thirty-three cents) per square meter, equivalent to $29 dollars per square meter at the official exchange rate as of March 2022. The total amount of monthly rent would be approximately $900,000.00 (nine hundred thousand dollars) a month, or R$4,400,000,00 reais. Grupo Cedro's offer was to enter into a commercial rent agreement for a total term of 25 years. The Grupo Cedro proposal was sent by Rafael Carassini, a representative of Tishman Speyer Brazil, on March 30, 2022. The e-mail sent by Tishman Speyer Brazil with the summary of Grupo Cedro's proposal attached a "draft" built to suit agreement (the "Built to Suit Agreement"). A copy of the e-mail is attached hereto as **Exhibit 3** and a copy of the Built to Suit Agreement is attached hereto as **Exhibit 4**.[4]

29.     ANEAS was quite surprised with the Proposal because the "*draft*" of the built to suit agreement was not a draft, but a robust close-to-final draft with no brackets and ready to be signed, which had probably been in discussion for weeks and, potentially, months without a single reference to ANEAS.

---

[4] Due to the length of the document and main issues of the 1782 Application that arise out of the agreement but are not concerning the agreement dispute itself, ANEAS did not attach a translated version of the document but will do so if this Court demands it to.

30.     The Built to Suit Agreement expressly states that Tishman Speyer Brazil is financially responsible to fund the renovation of the former São Luís school building to be rented by the subsidiary of Grupo Cedro.  Additionally, the Build to Suit Agreement sets forth that the tenant is never to fund renovations concerning the building.  And the Built to Suit Agreement expressly sets forth that the lease price would be R$ 128.33 per square meter.

31.     Already surprised with the Proposal process, ANEAS still considered reviewing the Built to Suit Agreement and was specifically alerted by Section 14.1 of the agreement.  This section states that ANEAS would authorize Grupo Cedro's subsidiary to assign the Built to Suit Agreement to another third party (non-related to Grupo Cedro), Centro Paulista Oncologia S/A, a company that is part of Grupo Oncoclínicas, automatically assigning the guarantor's rights as well.  ANEAS main question to Tishman Speyer Brazil was: Why is Grupo Cedro an intermediary?  Why is the Proposal signed and sent on behalf of Grupo Cedro's subsidiary when upon the agreement's signature the contract's rights would be automatically assigned to another group?  Tishman Speyer Brazil, as ANEAS' partner in the project, should not be entertaining proposals with intermediaries because, again, the rationale behind the Complex Real Estate Agreement would not be met, as an intermediary would not be efficient and, consequentially, decrease the rent price per square meter.

32.     Tishman Speyer's response was slippery: they said that Grupo Cedro and Grupo Oncoclínicas were partners, were close companies that would be renting together the real estate and, more important, the final lease payment would be R$ 128.33 the square meter.

(c)     **Tishman Speyer Brazil Pressures ANEAS to Sign the Built to Suit Agreement with Grupo Cedro.**

33.     As soon as the Proposal was sent, Tishman Speyer Brazil and, especially its long-term CEO, Daniel Cherman, who had been with the company for over twenty years, started to pressure ANEAS to sign the Built to Suit Agreement, a document that was supposed to be a first draft for consideration of ANEAS together with the Proposal.  Tishman Speyer

Brazil insisted that ANEAS should spend no more than one week reviewing the agreement and send the signature pages as soon as possible not to lose the business opportunity, especially considering the R$128,33 per square meter.

34.     As if ANEAS was not already doubtful about the Proposal process and the way Tishman Speyer has been conducting the process, ANEAS continued to act diligently and requested additional information from Tishman Speyer Brazil, especially with respect to financial projections related to the São Luís Real Estate Complex. A long-term agreement (25-year term) to rent 30% of its most valued asset was not supposed to be negotiated in one week with no financial documents or other disclosure documents in support thereof.

35.     ANEAS was then convinced that, despite acting diligently and always giving the benefit of the doubt to Tishman Speyer Brazil, something was not right.

(d)     **Tishman Speyer Brazil Did Not Disclose a Formal Joint Venture with Grupo Cedro.**

36.     At the end of June 2022, while ANEAS representatives were studying and discussing with their advisors the Cedro Group proposal, they discovered, fortuitously, a startling fact: the final amount of the lease price that would be paid by Oncoclínicas was R$ 165.00 per square meter and not R$ 128.33 as stated in the draft of the built-to-suit contract. In addition, Tishman Speyer Brazil had entered into a secret side contract with Grupo Cedro to regulate the appropriation of the difference of R$ 36.66 per square meter and its sharing between the parties (the "Secret Agreement").

37.     The R$36,66 difference per square meter deviated from ANEAS to the pocket of Tishman Speyer Brazil and Grupo Cedro would represent a R$186 million reais (almost $40 million dollars) loss for ANEAS throughout the life of the contract.

38.     The Secret Agreement was signed on March 3, 2022, and regulates a side deal between Tishman Speyer Brazil and Grupo Cedro. The Secret Agreement states that once the

Built to Suit Agreement is signed between Grupo Cedro's subsidiary and ANEAS, Grupo Cedro would assign the commercial lease to Oncoclínicas for R$165 reais per square meter.

39.     As stated previously, both the Proposal and the Built to Suit Agreement set up the commercial lease price offer at R$ 128.33 reais per square meter, so R$165.00 is R$36,67 reais in addition to R$128.33. The R$36,67 difference per square meter would be split between Tishman Speyer Brazil and Grupo Cedro, which would represent a R$200 million reais ($40 million dollars) loss for ANEAS throughout the life of the contract.[5] A copy of the Secret Agreement is attached hereto as **Exhibit 5**.

40.     The Secret Agreement confirms Tishman Speyer Brazil's intent to defraud who ANEAS. Tishman Speyer, as ANEAS' long-term business partner, as per its obligations under the Complex Real Estate Agreement, was supposed to act in good faith and focusing its best efforts to find suitable commercial tenants to ANEAS, which would revert to Tishman Speyer's own financial benefit, as it would profit from the future lease revenues. It is clear that Tishman Speyer Brazil used ANEAS as a stalking horse to profit on both sides of the commercial lease transaction.

41.     ANEAS then understood the reasons for Tishman Speyer Brazil's and its representatives', especially its long time CEO, Daniel Cherman, unjustified pressure to sign the very first proposal they received in such a short period of time and with no financial support documentation. Tishman Speyer Brazil would profit twice at the loss of ANEAS.

42.     It is important to highlight Tishman Speyer Brazil's and Daniel Cherman's attitude after ANEAS found out about the Secret Agreement. ANEAS, as always, continued to give Tishman Speyer Brazil several opportunities to explain itself about the intentional misrepresentations made to ANEAS. Tishman Speyer Brazil admitted that the Secret

---

[5] The Secret Agreement was not produced by Tishman Speyer at its own will. ANEAS initiated a pre-trial discovery proceeding against Tishman Speyer Brazil in November 2022 before the São Paulo State Court, which ruled favorably to ANEAS compelling Tishman Speyer Brazil to produce the Secret Agreement.

Agreement exists but resisted to produce the document to ANEAS on the grounds that such agreement was confidential.

43.     This justification made by Tishman Speyer Brazil that the Secret Contract was confidential was absurd.  It is unthinkable that an agent enters into contracts with third parties and in his own name relating to the principal's business and with a confidentiality clause in relation to the principal.  It is unthinkable that a confidentiality clause in a contract entered into by the agent, on his own behalf, with the principal's contractual counterparty, having as its object the contract between the principal and its contractual counterparty, could be effective against the principal.

44.     ANEAS sent a formal letter to Tishman Speyer Brazil on July 25, 2022, pointing out how outrageous the situation has become and demanding explanations, together with a copy of the Secret Agreement.  Tishman Speyer Brazil, in its response, on July 29, 2022, resisted to admitting any wrongdoings and stated that it is common practice for the company to partner with coinventors for large projects, admitting that Grupo Cedro would be investing on the renovations of the former São Luís school building.

45.     ANEAS forwarded several messages and notifications demanding the production of the Secret Contract.  A good example is an email dated August 17, 2022, sent shortly before a meeting between the Parties, in which Father Jonas recorded his expectation that Tishman Speyer Brazil would display the Secret Agreement entered into with Grupo Cedro "to prove your good faith."  A copy of the August 17, 2022 email is attached hereto as **Exhibit 6**.

46.     Again, ANEAS was chocked that (i) the business partner who it had selected for the main real asset it owns had planned to defraud ANEAS and continue to resist in producing the Secret Agreement; and (ii) Tishman Speyer Brazil's admission that Grupo Cedro would finance the renovations as well.  As repeated many times during the negotiation process and as

set forth on the Complex Real Estate Agreement, ANEAS made it more than clear that Tishman Speyer was to finance the renovations of the São Luís Real Estate Complex with its own proceedings and not third-party proceedings.

47.     From the end of June, when ANEAS found out about the Secrete Agreement, through September, ANEAS gave Tishman Speyer Brazil and its representatives a number of chances to try to compose amicably about the misrepresentations made to ANEAS and the future of their business relationship as it concerns to the São Luís Real Estate Complex. However, Tishman Speyer Brazil's narrative was more and more incoherent, especially trying to avoid at all costs the production of the Secret Agreement.

48.     After reporting to its Vatican headquarters, ANEAS was left with no other alternative than to terminate its business relationship with Tishman Speyer Brazil.

### C.     ANEAS Notifies Tishman Speyer Brazil and Tishman Speyer Properties L.P. to Terminate Their Business Relationship and Initiates Civil and Criminal Proceedings in Brazil.

49.     On September 27, 2022, ANEAS sent a formal notice to Tishman Speyer Brazil to terminate their business relationship, because of the outrageous facts that took place between and the real estate group's resistance in being transparent with ANEAS.

50.     ANEAS, intrigued with the conduct of Tishman Speyer Brazil, also notified its American parent company, Tishman Speyer Properties L.P., via its majority shareholder and CEO, Mr. Robert Speyer, on October 6, 2022 (the "Notice").  A copy of the notice is attached hereto as **Exhibit 7**.

51.     The Notice calls Tishman Speyer Properties L.P.'s attention to the following: (i) in March 2022, Tishman Speyer Brazil presented ANEAS with the Proposal, which offered a lease price of R$ 128.33 reais per square meter for the former São Luís school building; (ii) ANEAS found out that also in March 2022  Tishman Speyer Brasil entered into the Secret Agreement with Grupo Cedro for a lease price of R$ 165.00 reais per square meter, and that

the difference of R$ 36.67 reais per square meter would be split between Grupo Cedro and Tishman Speyer Brazil (actually, is not that this difference would be properly split between Tishman Speyer and Cedro. What would happen is that the difference would be diverted to Cedro so that it, on the other hand, would assume the costs of the works under Tishman's responsibility); and (iii) that under Brazilian criminal law, Tishman Speyer Brazil's conduct is typified as embezzlement. No response was addressed by Mr. Speyer, and ANEAS, again, sent a second notice to Mr. Speyer on October 13, 2022, for which no answer was received as well. A copy of the second notice is attached hereto as **Exhibit 8**.

### D.   ANEAS Initiates a Criminal Proceeding for Embezzlement Against Tishman Speyer Brazil's Executives.

52.    On October 10, 2022, ANEAS filed a formal complaint with the Third Police Department for Financial and Economic Fraud Investigation for the São Paulo State Criminal Investigation Department or *3ª Delegacia de Polícia de Investigações sobre Fraudes Financeiras e Econômicas do Departamento Estadual de Investigações Criminais* – DEIC, (the "Brazilian Criminal Authority") against Tishman Speyer Brazil and Cedro's executives: Daniel Cherman (CEO); Haaillih Bittar; Leila Rodrigues Jacy da Silva; Rafael Carassini; Carlos Adel de Freitas; Eduardo Soares do Couto Filho; and Bruno Lemos Ferrari.

53.    The attempted embezzlement allegations were based on the discovery that Tishman Speyer Brazil and Grupo Cedro signed the Secret Agreement so that Grupo Cedro would partially fund the renovation project in exchange for a higher commercial lease price per square meter, higher than what was offered to ANEAS, simply using ANEAS as a stalking horse – which would represent a loss for ANEAS of at least R$186 million rëais. According to the police inquiry, such conduct could be typified as embezzlement, pursuant to Article 171 of the Brazilian Criminal Code. A copy of the formal complaint filed by ANEAS with the Brazilian Criminal Authority is attached hereto as **Exhibit 9**.

54.    Thus far, Tishman Speyer Brazil denied all allegations, four of its executives have been deposed by the Brazilian Criminal Authority (Daniel Cherman, Haaillih Bittar, Leila Rodrigues Jacy da Silva and Rafael Carassini), as well as ANEAS' representative, Jonas Carvalho de Moraes.  Grupo Cedro's representatives have also been deposed (Carlos Adel de Freitas and Eduardo Soares do Couto Filho), whereby they affirmed that Grupo Cedro was not a party to and had no knowledge of the Complex Real Estate Agreement.  Grupo Cedro's executives also alleged that Cedro signed the Secret Agreement in good faith and under the belief that Tishman Speyer Brazil was indeed empowered to enter into such agreement.  No decision has yet been issued by the Brazilian Criminal Authority on ANEAS' complaint.

### E.    ANEAS Initiates a Pre-Discovery Civil Proceeding Against Tishman Speyer Brazil with the São Paulo State Court to Compel Production of the Secret Agreement.

55.    On November 11, 2022, ANEAS filed a pre-discovery proceeding with the Second Chambers for Corporate Matters with the São Paulo State Court requesting the court to compel Tishman Speyer Brazil to produce the Secret Agreement.  On November 18, 2022, the court granted ANEAS' request and demanded Tishman Speyer Brazil to produce the Secret Agreement.

56.    On November 23, 2022, the Secret Agreement was finally produced to ANEAS.

57.    The Secret Agreement confirmed that Tishman Speyer Brazil had attempted to perpetrate a millionaire scam to defraud ANEAS.  In summary, Tishman Speyer Brazil tried to convince ANEAS to sign the Built to Suit Agreement with a lease value of R$ 128.33 per square meter with Cedro, omitting that the actual lease amount that would be paid by the final tenant, Oncoclínicas, which would be the assignee of the lease, was R$ 165.00 per square meter, and that the difference of R$ 36.666 per square meter would be diverted to pay a third party, which was Cedro, so that it would assume the most part (more precisely, 2/3) of the work costs, from which Tishman Speyer Brazil was contractually responsible.

58.     In other words, if the plan had been successful, Tishman Speyer Brazil would divert a relevant part of the revenue that would be appropriate to ANEAS to fund a contractual obligation of its sole responsibility.

59.     Comparing the Secret Agreement with the Built to Suit Agreement shows that Tishman Speyer Brazil acted to try to deceive and harm ANEAS. The first point of comparison is Grupo Cedro's role in the business. In the draft of the Built to Suit Agreement, Grupo Cedro and its subsidiary SP Medical Center Ltda. are defined as lessee and guarantor, respectively, who would assign their position in the agreement to Oncoclínicas. But Grupo Cedro was not a "lessee" at all, it was, rather, a partner of a joint venture with Tishman Speyer Brazil, which would assume the largest part of the costs of the works to adapt the São Luís Real Estate Complex and take part of the lease fee to be paid by Oncoclínicas.

60.     Tishman Speyer Brazil introduced Grupo Cedro to ANEAS as a "lessee" who would assign the lease to Oncoclínicas (hiding that Cedros true role in the business was that of a partner who would assume most of the costs of works), precisely so that there would be "two separate contracts": a contract between ANEAS and  Grupo Cedro, which would be the only contract that ANEAS would be aware of (with false representations and warranties concerning the conditions of the lease), and a second contract (or pair of contracts) between Grupo Cedro and Oncoclínicas (with the true conditions of the lease), which ANEAS would never be aware of .

61.     The second point of comparison is the financial liability for funding the project. In the draft of the Built to Suit Agreement sent by Tishman Speyer Brazil on March 30, 2022, there are numerous provisions and recitals that expressly provide that the works on the São Luís Real Estate Complex would be exclusively funded by Tishman Speyer Brazil. The Secret Agreement indicates, however, that Grupo Cedro would incur 2/3 of the costs of the works to adapt the property (Clause 4.1). That is, in the draft of the Built to Suit Agreement, Tishman

Speyer Brazil stated that it would pay for all the works to adapt the São Luís Real Estate Complex, when, in fact, Grupo Cedro (which was falsely presented as a "lessee") would incur 2/3 of these costs and, precisely because of that, "snatch" a generous slice of the lease paid by Oncoclínicas.

62.     The third and most important point of comparison is the lease price. The draft of the Built to Suit Agreement expressly indicates that the lease amount to be paid by the final tenant Oncoclínicas was R$ 128.33 per square meter (Clause 8.1). Likewise, the email from Mr. Rafael Carassini for ANEAS, attaching the draft of the Built to Suit Contract, also indicated that the lease amount to be paid by the final tenant Oncoclínicas would be R$ 128.33. The Secret Agreement, however, as we saw above, makes it very clear, in several passages, that the lease amount that would be paid by Oncoclínicas was R$ 165.00 per square meter (preamble, clause 3.1.a and clause 4.1).

63.     It should be registered that, pursuant to the provisions of the Secret Agreement, of the total lease amount of R$ 165.00 per square meter, R$ 36.666 per square meter would be allocated to Cedro (2/3 fraction over the fraction of 1/3 of the amount of BRL 165.00, as provided for in Clauses 3.1 and 4.1). It should be noted that the value of R$ 128.33 per square meter indicated as the lease value in the draft of the Built to Suit Agreement represents exactly, with the precision of the decimal places of cents, the amount of R$ 165.00 the square meter with the deduction of R$ 36.666 per square meter that would be destined to Grupo Cedro. That is, the draft of the Built to Suit Agreement sent by Tishman Speyer Brazil to ANEAS concealed that the final global amount that would be paid by Oncoclínicas for the lease of the property was R$ 165.00 per square meter and that, of this amount, BRL 36.666 per square meter would be allocated to Cedro.

64.     The draft of the Built to Suit Agreement indicated the lease value of BRL 128.33 per square meter as the final and global lease amount that Oncoclínicas would pay for renting

the property, without any clue that that amount represented, in fact, the amount of R$ 165.00 per square meter (which was the true global lease value) with the deduction of the amount of R$ 36.66 per square meter.

65. In summary, the draft of the Built to Suit Agreement: (i) indicates Grupo Cedro as a lessee when in fact it was a partner of Tishman Speyer Brazil that would incur 2/3 of the construction costs; (ii) indicates that Tishman Speyer Brazil would pay for all works on the property, when, in fact, Grupo Cedro would incur 2/3 of the work costs; and (iii) indicates the lease price as being R$ 128.33 per square meter, when, in fact, the overall lease price that would be paid by Oncoclínicas was R$ 165.00 per square meter and the difference in BRL 36,666 per square meter would go directly to Grupo Cedro.

### F. Tishman Speyer Brazil's CEO Resigns On The Next Business Day After ANEAS Secured a Favorable Order From The São Paulo State Court to Compel Production of the Secret Agreement.

66. On November 18, 2022, a Friday, the São Paulo State Court issued a favorable decision on the preliminary discovery proceeding. On Monday, November 21, 2022, one business day after the court's decision, Daniel Cherman "resigns" from its CEO role, after over 20 consecutive years in Tishman Speyer Brazil from which 13 consecutive years were occupying the position of CEO. Additionally, another intriguing fact is that Mr. Cherman had been reelected for the CEO role on April 2, 2022, for a two-year term, which was not nearly close to its end. Mr. Cherman only made a public announcement of his resignation as a CEO in February 2023, three months after the fact. A copy of the corporate minutes shows such abrupt change and are attached hereto as **Exhibit 10**.

67. However, Mr. Cherman gave his formal statement to the Brazilian Criminal Authorities on December 8, 2022, 16 days after his resignation as Tishman Speyer Brazil's CEO, and still identified himself as the company's CEO. A copy of Mr. Cherman's formal statement transcript is attached hereto as **Exhibit 11**.

18

68.     It is very intriguing that an executive who presided Tishman Speyer Brazil for more than 20 year "resigns" on the first business day after the company receive a court subpoena compelling it to produce the Secret Agreement.  It cannot be a mere coincidence.

69.     Apparently, there was a great effort put by Tishman Speyer Brazil and, potentially, Tishman Speyer Properties L.P., to conceal Mr. Cherman's resignation or dismissal by postponing the public disclosure of the fact, certainly due to the well-founded fear that the proximity between the court order and the resignation could be interpreted by the Tishman Speyer group recognizing the gravity of the Secret Agreement.  A real scandal that can seriously impact the Tishman Speyer Group's reputation.

## III.     THE FOREIGN CRIMINAL PROCEEDING

70.     On October 10, 2022, ANEAS filed a so-called "*notícia-crime*" (in Latin, *notitia criminis*) – which is kind of a criminal referral, based on Article 5 of the Brazilian Criminal Proceeding Code – and subsequently, our request to initiate a police investigation to investigate the crime of attempted fraud was accepted.

71.     Respondent is therefore likely to be in possession, custody, and control of information highly material to the Brazilian Criminal Proceeding.  This information would be relevant to ANEAS's criminal proceeding.

### A.     The Brazilian Criminal Prosecution

72.     Under Brazilian criminal law, there are three types of crimes that can result in a criminal prosecution (crimes against the honor of an individual crimes that require an unconditional prosecution and crimes that require the victim's representation).  ANEAS's criminal proceeding requires the victim's, or ANEAS's, representation.

73.     Once initiated, the victim has six months to indicate the potential author of the crime.  The six months start to count from the moment ANEAS knows who the author of the crime is or when ANEAS has any potential indication of authorship.  Here, the six-months

period is counted from the moment Tishman Speyer Brazil produced in the pre-discovery proceeding, or on November 23, 2022.

**B.      The Attempted Fraud Against ANEAS**

74.      Conduct against ANEAS is a crime of public prosecution conditional upon the victim's representation.   Therefore, ANEAS filed a criminal referral, or "notícia-crime," exposing the facts and requesting the initiation of a police investigation by the Brazilian Criminal Authority.  As of today, ANEAS has not accused a specific party of embezzlement because it needs more evidence to show who was responsible for orchestrating the Secret Agreement.   That is the reason ANEAS seeks evidence in this District, to identify the authorship.

**C.      The Chronology of the Criminal Proceeding**

75.      ANEAS filed the Brazilian Criminal Proceeding with the Brazilian Criminal Authority requesting the initiation of a formal criminal investigation into Tishman Speyer Brazil and its executives.  Subsequently, Father Jonas (one of ANEAS'S priests) was deposed by the Brazilian Criminal Authority and confirmed everything that was described in the initial filing to the Brazilian Criminal Authority as the victim's representative.   He provided his version of the facts.  This was the first testimony in the Brazilian Criminal Proceeding.  Then, Daniel Cherman was deposed on behalf of Tishman Speyer Brazil.  Grupo Cedro filed a petition stating that it has nothing to do with the Brazilian Criminal Proceeding, as the group is unaware of the fraud at issue under the Brazilian Criminal Proceeding.

76.      On May 22, 2023, almost six months after ANEAS had access to the Secret Agreement through the preliminary discovery proceeding, ANEAS filed a criminal complaint ("representation") with the Brazilian Criminal Authority expressing its interest for initiating a formal criminal proceeding.   The representation is dependent on the prior investigation conducted by the Brazilian Criminal Authority concerning the crime of embezzlement against

Mr. Daniel Cherman, Rafael Carassini, and José Alberto Torres Muniz Ventura (the Tishman Speyer Brazil's executives who signed the Secret Agreement), as set forth in Section 171 of the Brazilian Criminal Code, and the conspiracy to embezzle ANEAS, pursuant to Section 39 of the Brazilian Criminal Procedure Code.

## IV.   JUDICIAL ASSISTANCE PURSUANT TO SECTION 1782

### A.   The Discovery Sought via the Section 1782 Application Is Essential for ANEAS' Claims in The Foreign Criminal Proceeding

77.     The documents and limited testimony requested by ANEAS through its Section 1782 Application are highly relevant for the Brazilian Criminal Proceeding.  The requested documents and testimony will allow ANEAS to identify and further evince intent for the purpose of the embezzlement criminal accusation.

78.     Because such documents will list the dates, correspondences between Tishman Speyer Brazil and Tishman Speyer Properties L.P., they will enable ANEAS to complement and further support its allegations of Tishman Speyer Brazil executives' intent to defraud ANEAS, typifying the embezzlement crime under Brazilian law.

79.     Neither the Brazilian Criminal Authority nor any Brazilian Courts have jurisdiction to compel a foreign entity to produce documents in a Brazilian proceeding. Additionally, as the targets of the subpoenas to be issued under the section 1782 Application are not and will not be parties to the foreign proceedings, the only mechanism available for ANEAS to seek such documents is through this Application.

## V.   BRAZILIAN COURT'S RECEPTIVENESS TO SECTION 1782 APPLICATION AND NON-CIRCUMVENTION OF BRAZILIAN PROOF-GATHERING POLICIES

80.     There is no reason to believe that the Brazilian Criminal Authority will be unreceptive to the evidence sought here and the request does not seek to circumvent foreign proof-gathering restrictions or other policies of Brazil.  To be clear, there is no restriction or

prohibition under Brazilian law for collecting and using the type of discovery that is sought here. To the contrary, there is evidence that they will be receptive of it.

81.    The Brazilian legal system allows and welcomes foreign evidence for use in Brazilian litigation.[6] Additionally, neither the Probate Court nor the Corporate Court have restrained ANEAS from obtaining foreign evidence.

82.    No prior application for similar relief has been made. I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 under the laws of the United States that the fore true and correct.

Executed on July 4, 2023
in São Paulo, Brazil]

José Luiz Bayeux Neto

---

[6] See Article 369 of the Brazilian Civil Procedure Code and Art. 372 ("The judge may admit the use of evidence produced in another proceeding, attributing to it the value he deems appropriate, observing the right of the other party to be heard.").